# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AV2, | |
| *Plaintiff,* | |
| v. | CIVIL ACTION<br>NO. 22-369 |
| DENIS RICHARD MCDONOUGH<br>Secretary of Veterans Affairs | |
| MONIQUE SMART<br>Staff Attorney, Department of Veterans<br>Affairs | |
| LLOYD J. AUSTIN, III<br>Secretary of Defense | |
| UNITED STATES COURT OF APPEALS<br>FOR THE ARMED FORCES | |
| ARMY COURT OF CRIMINAL APPEALS | |
| JOHN HARPER COOK<br>Colonel, U.S. Army<br>(In his Capacity as a Military Judge) | |
| CLINTON M. MURRAY<br>Master Sergeant, U.S. Army<br>(As Indispensable Party), | |
| *Defendants.* | |

**PAPPERT, J.**                                                              April 20, 2022

## MEMORANDUM

Former Army officer AV2 was allegedly sexually assaulted by Master Sergeant

Clinton Murray and is a witness in Murray's upcoming military court trial.[1]  The

military judge overseeing Murray's case ruled that certain communications between

---

[1]      AV2, which refers to "alleged victim 2," is her pseudonym in the military court proceedings.

AV2 and a Department of Veterans Affairs psychotherapist were not protected from disclosure under the Military Rules of Evidence. AV2 sought relief in the two military appellate courts, but both affirmed the military judge's ruling.

AV2 now asks the Court to "revise and correct" what she believes all three military courts got wrong. The Defendants moved to dismiss the case, and the Court, after reviewing the parties' briefing and holding oral argument, grants the Motion. Some of AV2's claims are barred by sovereign and judicial immunities, while the Court lacks subject matter and equitable jurisdiction to review the rest. With isolated exceptions not applicable here, Article III courts do not have the authority to review military judges' rulings.

I

A

AV2 was assigned to the United States Army's 82nd Airborne Division at Fort Bragg, North Carolina, and deployed to Afghanistan from April of 2017 to January of 2018. (Compl. ¶ 6, ECF 1-1.) She was allegedly sexually assaulted by Master Sergeant Murray after returning to Fort Bragg in May of 2018. (*Id.* at ¶ 37.) The next month, she was diagnosed with post-traumatic stress disorder and has since received "continual[]" treatment from psychotherapists. (*Id.* at ¶ 38.) AV2 was honorably discharged in May of 2020. (*Id.* at ¶ 8.)

Four months before being discharged, AV2 applied for medical benefits from the Department of Veterans Affairs so she could continue her PTSD treatment as a civilian. (*Id.* at ¶ 40.) To be allowed to do so, AV2 had to file a claim with the VA and receive from it a PTSD diagnosis. (*Id.* at ¶ 41.) AV2 was evaluated by a VA psychotherapist,

who then completed the "Initial Post Traumatic Stress Disorder (PTSD) Disability Benefits Questionnaire."  (*Id.* at ¶ 42; Pl. Ex. F, ECF 1-7.)  The Questionnaire includes AV2's confidential communications with the psychotherapist.  (Compl. ¶ 44.)

The Questionnaire is the subject of AV2's lawsuit in this Court.  (Compl. ¶ 42.) Specifically, she challenges its disclosure in pretrial proceedings for Murray's court-martial at Fort Bragg, which is scheduled to start June 13, 2022.  (*Id.* at ¶ 29.)  Colonel John Harper Cook is the presiding military judge.

B

On May 7, 2021, AV2's special victims' counsel ("SVC")[2] provided the government documents pertaining to AV2's VA claim for disability benefits, and the government gave them to the defense.  (Feb. 16, 2022 Cook Order ¶ 1, Defs. Ex. A, ECF 11-1.)  The defense then moved for the production of more of her claim records.  (*Id.* at ¶ 2.)

Judge Cook held a hearing on this issue on May 27, 2021.  He first found AV2's records were relevant and necessary for the defense because if one files a "claim for money, and claiming that it is related to these charges," it is evidence for bias impeachment.  (Hr'g Tr. 7:10–16, 34:18–20, Defs. Ex. B, ECF 11-2.)  The key issue at the hearing, however, was whether her records were privileged under a military rule of evidence providing patients a privilege to refuse and prevent the disclosure of confidential communications between the patient and a psychotherapist if "made for the purpose of facilitating diagnosis or treatment" of her mental or emotional condition. Mil. R. Evid. 513.

---

[2]      SVCs provide legal assistance, including representation and consultation, to victims of an alleged "sex-related" offense.  10 U.S.C. § 1044e.

AV2's SVC confirmed there was no privilege claim under MRE 513 but said the records may include information to which the rule applies. *See* (Hr'g Tr. 36:16–19, 37:20–24). Judge Cook then proposed ordering the government to have the custodian of AV2's records send them to him for an *in camera* review, scrutinizing them for information covered by MRE 513 and contacting her SVC *ex parte* to discuss any potential privilege claims. *See* (*id.* at 42:13–43:7). MRE 513 questions would then be litigated if needed, and if appropriate the records would ultimately be disclosed to the parties. *See* (*id.* at 43:12–44:7). AV2's SVC and the parties agreed with this proposal, so Judge Cook issued an order formalizing it after the hearing. (*Id.* at 46:11–21, 49:18–22; May 27, 2021 Cook Order 4, Pl. Ex. G, ECF 1-8.) He also granted the SVC's request that he order the VA to exclude MRE 513 information from the records. (Hr'g Tr. 47:15–19; May 27, 2021 Cook Order 4.)

Within a few days, Monique Smart, a staff attorney at the VA Office of General Counsel, was contacted by a VA medical center privacy officer about the release of AV2's records. (Smart Decl. ¶ 2, Defs. Ex. D, ECF 11-4.) On June 2, 2021, she learned the Department of Defense sought AV2's Veterans Benefit Administration records and that the VBA needed a "signed release" or an order from a federal court to release them. (*Id.* at ¶ 4; Smart Email Chain 13, Pl. Ex. H, ECF 1-9.) The next day, Smart asked counsel to provide a signed release from AV2 because the military-court order she received was insufficient. (Smart Email Chain 3.) She explained that though the Privacy Act covered AV2's records, AV2 could voluntarily sign the release or Judge Cook could order her to sign it. *See* (*id.* at 2; Smart Decl. ¶ 5).

On June 7, 2021, the prosecutor (referred to as trial counsel in the military courts) sent Smart a release signed by AV2 and her SVC. (*Id.* at 1; Smart Decl. ¶ 6; AV2 Records Release, Pl. Ex. I, ECF 1-10.) Two days later, a VA privacy officer mailed the records to Judge Cook. (Records Shipment Letter, Defs. Ex. E, ECF 11-5.)

C

Judge Cook reviewed the records, including the Questionnaire, *in camera*, and sent them to AV2's SVC, who claimed all thirteen of its pages, among other records, were privileged under MRE 513. (June 24, 2021 Cook Order ¶¶ 6–7, Defs.' Ex. F, ECF 11-6.)

On June 24, 2021, Judge Cook issued an interim ruling *ex parte* to AV2's SVC stating that he intended to release the Questionnaire with redactions to only three pages. (*Id.* at 8–9.) Judge Cook stated he "wrestled" with this decision, noting the Questionnaire says it is for "disability evaluation, not for treatment purposes." (*Id.* at 7–8.) He explained AV2 communicated with the VA psychotherapist "for the purpose of determining her eligibility for VA disability benefits," not for "facilitating diagnosis or treatment" of her mental or emotional condition. (*Id.* at 8.)

Judge Cook issued his final ruling on June 28, 2021. (Pl. Ex. A, ECF 1-2.) After considering an objection from SVC, he maintained his decision to release most of the Questionnaire to the parties unredacted. *See* (Defs. Ex. G, ECF 11-7; June 28, 2021 Cook Order ¶ 10(b)). Judge Cook stayed the release of AV2's records, however, because SVC told him AV2 intended to file for "extraordinary" relief in the next level of the military court system. (June 28, 2021 Cook Order ¶ 11.)

5

D

Congress has created "specialized military courts." *Ortiz v. United States*, 138

S.Ct. 2165, 2170 (2018). At the trial level, "officer-led" courts-martial decide cases for a

"vast swath of offenses" and are "subject to several tiers of appellate review" as part of

an "integrated 'court-martial system'" resembling state courts. *See id.* at 2170–71,

2174–75 (quoting *United States v. Denedo*, 556 U.S. 904, 920 (2009) (Roberts, C.J.,

concurring in part and dissenting in part)); *Schlesinger v. Councilman*, 420 U.S. 738,

758 (1975). Army cases like Murray's are appealed to the Army Court of Criminal

Appeals ("ACCA"), then the Court of Appeals for the Armed Forces ("CAAF"). *See Weiss

v. United States*, 510 U.S. 163, 166–69 (1994). Supreme Court review by writ of

certiorari is also available for certain cases, though not this one.[3]

The military justice system's "essential character" is "judicial." *Ortiz*, 138 S. Ct.

at 2174–75 (explaining courts-martial operate as "instruments of military justice"

rather than "military command" and exercise "judicial power" of the "same kind"

civilian courts wield (internal quotation marks omitted)). But military law is a

"jurisprudence which exists separate and apart from" the governing law in federal

courts. *Burns v. Wilson*, 346 U.S. 137, 140 (1953). Indeed, military courts are "Article I

legislative court[s] with jurisdiction independent of" the Article III judicial power. *Gosa

v. Mayden*, 413 U.S. 665, 686 (1973).

---

[3] The Supreme Court can review cases the CAAF decides under Article 67 of the Uniform Code of Military Justice. *See Ortiz*, 138 S. Ct. at 2172–73 (citing 28 U.S.C. § 1259). But here, AV2 sought relief in the CAAF pursuant to Article 6b.

E

On July 12, 2021, AV2 filed a petition in the ACCA for a writ of mandamus ordering Judge Cook to apply MRE 513 to the entire Questionnaire.  (Defs. Ex. I, ECF 11-9.)  The ACCA subsequently denied the petition.  (Pl. Ex. B, ECF 1-3.)  AV2 appealed that decision to the CAAF, which similarly ruled against her.  (Defs. Ex. K, ECF 11-11; Pl. Ex. C, ECF 1-4.)  AV2 then filed a petition for reconsideration and moved for an *in camera ex parte* review of the Questionnaire.  (Defs. Ex. L, ECF 11-12.) The CAAF denied both requests.  (Dec. 9, 2021 CAAF Order, Pl. Ex. D, ECF 1-5.)

On January 26, 2022, Judge Cook told counsel he would release AV2's records, including the Questionnaire, to the parties on February 4.  *See* (Pl. Ex. E, ECF 1-6).  A week before the scheduled release, AV2 filed her Complaint in this Court against Judge Cook in his capacity as a military judge, Murray as an indispensable party, Smart, Secretary of Veterans Affairs Denis McDonough, Secretary of Defense Lloyd Austin, the ACCA and the CAAF.  (ECF 1.)

In Count I, AV2 alleges Smart and McDonough violated the Privacy Act when Smart released AV2's VA claim records to Judge Cook without authorization.  (Compl. ¶¶ 76–85.)  Count II claims Judge Cook and Austin violated Rule for Courts-Martial 703 when Judge Cook ordered AV2 to authorize the release of her records from the VA. (*Id.* at ¶¶ 86–89.)  Count III contends Judge Cook and Austin violated Military Rule of Evidence 513 when Judge Cook determined AV2's confidential communications with the VA psychotherapist were not privileged under that rule.  (*Id.* at ¶¶ 90–103.)

In addition to her three statutory and military rule claims, AV2 asserts four constitutional claims.  In Count V,[4] she alleges Cook and Austin infringed her Fourth Amendment rights when Judge Cook violated MRE 513.  (*Id.* at ¶¶ 104–07.)  Count VI asserts Judge Cook and Austin failed to provide her due process in violation of the Fifth Amendment when Judge Cook unlawfully ordered AV2 to sign the release authorization form.  (*Id.* at ¶¶ 108–10.)  Count VII contends the ACCA and Austin also violated the Fifth Amendment due process clause when the ACCA did not properly analyze AV2's privilege claim under MRE 513.  (*Id.* at ¶¶ 111–15.)  Finally, Count VIII alleges another Fifth Amendment due process violation—against the CAAF and Austin for the CAAF's failure to follow its procedural rules.  (*Id.* at ¶¶ 116–25.)

AV2 sought to prevent the Questionnaire's disclosure through several procedural avenues, namely an injunction, temporary restraining order, order of mandamus and orders remanding the case to the CAAF and the ACCA.  *See* (*id.*).

On February 3, 2022, the day before the planned release of AV2's records, defense counsel informed the Court that trial counsel in Murray's court-martial would soon file a request—to which "all parties" consented—to stay the records' disclosure but could not confirm Judge Cook would grant it.  (Feb. 3, 2022 Defense Counsel email.)  That evening, the Court issued an order staying the Questionnaire's release and scheduling briefing and a hearing for a forthcoming preliminary injunction motion from AV2.  (Feb. 3, 2022 Order, ECF 8.)

On February 25, 2022, after AV2 filed her motion, Defendants moved to dismiss her Complaint.  (ECF 10; ECF 11.)  The Court then issued an order postponing the

---

[4]      There is no Count IV in AV2's Complaint.

preliminary injunction motion hearing and scheduling oral argument on the Motion to Dismiss.  (Mar. 1, 2022 Order, ECF 15.)  AV2 subsequently responded to the Motion, and the Court heard oral argument on March 16.  (ECF 17; ECF 18.)

II

A

A party can move for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Federal courts have "limited jurisdiction" and possess "only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  The party asserting federal jurisdiction carries the burden to show "at all stages of the litigation" that the case is "properly before" the court.  *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

A court reviewing a motion to dismiss for lack of subject matter jurisdiction must first determine whether the jurisdictional challenge is facial or factual.  *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  Facial challenges contest the "sufficiency of the pleadings," but a factual challenge goes to the "actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (alterations removed).  For the latter, a plaintiff's allegations are not presumed true, and a court can "weigh and consider evidence outside the pleadings."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Aichele*, 757 F.3d at 358 (quoting *Gould Elecs. Inc v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).  Defendants' Motion to Dismiss presents a factual challenge.  *See* (Oral Arg. Tr. 18:14–22, 53:21–25, ECF 19).

9

B

Defendants argue sovereign immunity bars Counts II and III, which allege violations of Rule for Courts-Martial 703 and Military Rule of Evidence 513, respectively.  (Mot. to Dismiss 19–20.)  AV2 responds that sovereign immunity does not apply and, even if it did, has been waived.  (Brief in Opp. to Mot. to Dismiss 5–7, 9–18, ECF 17.)

1

Sovereign immunity shields the United States from suit "without its consent." *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009).  Consent is a "prerequisite for" subject matter jurisdiction and defines its terms.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

The federal government consents to suit by waiving sovereign immunity.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Such waivers cannot be implied; they must be "unequivocally expressed in statutory text," and they are "strictly construed" in the government's favor so its consent to suit is "never enlarged beyond what a fair reading of the text requires."  *Lane v. Pena*, 518 U.S. 187, 192 (1996); *FAA v. Cooper*, 566 U.S. 284, 290 (2012); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (explaining subject matter jurisdiction over federal government suits requires a "clear statement from the United States waiving sovereign immunity together with a claim falling within the terms of the waiver" (citation omitted)).

Sovereign immunity protects both the federal government and "its agencies and officers when the latter act in their official capacities." *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005) (citing *Meyer*, 510 U.S. at 475).  In suits seeking injunctive relief

against federal officers in their official capacities, the "crucial question" regarding sovereign immunity is whether the relief sought is really "against the sovereign." *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687 (1949).

Injunctive relief that is "sought nominally against an officer" is actually "against the sovereign" when it would "operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam); *see Larson*, 337 U.S. at 688 (explaining that injunctive relief, "although nominally directed against the individual officer," may be "in substance" against the federal government). If so, the action is barred by sovereign immunity, and a court will lack subject matter jurisdiction absent a waiver. *Larson*, 337 U.S. at 688.

But there are suits for injunctive relief "against officers of the sovereign which are not suits against the sovereign." *Id.* at 689. In particular, the exceptions are actions alleging (1) "action by officers beyond their statutory powers," or *ultra vires*, and (2) "even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963). In either case, the officer's acts can be the basis of a suit for injunctive relief "against the officer as an individual" rather than the sovereign, *id.* at 622 (quoting *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962)), and sovereign immunity does not stand in the way, *Clark v. Libr. of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984).

2

Because Counts II and III are in substance against the federal government, they are barred by sovereign immunity unless it is waived. *See Larson*, 337 U.S. at 688. AV2 relies on the *ultra vires* exception, but it does not apply. *See Dugan*, 372 U.S. at 621–22.

Under that exception, a federal officer's actions that exceed statutory limits are "considered individual and not sovereign actions" because the officer is "not doing the business which the sovereign has empowered him to do" or is "doing it in a way which the sovereign has forbidden." *Larson*, 337 U.S. at 689 (explaining he "may be made the object of" injunctive relief because he is acting "*ultra vires* his authority"). If the officer makes a wrong decision, however—whether of "law or fact"—that doesn't mean his acts based on it are "beyond his authority and not the action of the sovereign." *Id.* at 685 (distinguishing decisions relating to the "terms of [the officer's] statutory authority"). Actions alleging the officer erred legally or factually are "against the government and thus barred unless immunity is waived." *E.V. v. Robinson*, 906 F.3d 1082, 1091 (9th Cir. 2018) (applying the *Larson* framework to a case with closely similar facts).

As an initial matter, although the *ultra vires* exception covers extra-statutory acts, AV2 alleges Judge Cook violated military-court rules, which are not statutorily prescribed. The president promulgated these provisions by executive order. *See* 10 U.S.C. § 836; *Manual for Courts-Martial* Parts II–III (2019 ed.); *e.g.*, Exec. Order No. 13825, 83 Fed. Reg. 9889 (Mar. 8, 2018).

Turning to Count II, AV2 contends Judge Cook's interpretation of MRE 513 as applied to the Questionnaire was incorrect, not that he exceeded his power. In particular, she disagrees with Judge Cook's ruling that most of the Questionnaire could be produced to the parties unredacted. He did so after reviewing her records *in camera*, considering argument from her SVC and "wrestling" with his analysis. AV2 just thinks Judge Cook got it wrong, which is not enough to circumvent the sovereign immunity

12

bar.  *See Larson*, 337 U.S. at 685.  He followed his statutory directive to "rule upon all questions of law."  10 U.S.C. § 851(b).

As for Count III, the record refutes AV2's core allegation—that Judge Cook, in violation of RCM 703, ordered her to authorize the Department of Veterans Affairs to release her claim records.  In fact, he ordered—with AV2's consent—the government to send them to him for an *in camera* review.  *See* (May 27, 2021 Cook Order 4; Hr'g Tr. 46:11–21).  Judge Cook also granted SVC's request that he order the VA to exclude information covered by MRE 513.  (Hr'g Tr. 47:15–19.)

Although Smart requested a signed release from AV2, AV2 alleges *Judge Cook* ordered AV2 to authorize the release of her records.  (Smart Email Chain 3.)  Smart said Judge Cook could order AV2 to sign the release if she would not do so voluntarily, but there is no evidence he did so.  *See* (*id.* at 2; Smart Decl. ¶ 5).  Rather, trial counsel sent Smart a release signed by both AV2 and her SVC.[5]  (Smart Email Chain 1; Smart Decl. ¶ 6.)

Even if Judge Cook had ordered AV2 to authorize the release of her records, the *ultra vires* exception to sovereign immunity would not apply.  She does not allege he went beyond his statutory power, only that he didn't follow a military procedural rule.  Judge Cook acted within his authority while presiding over Murray's court-martial.  *See* 10 U.S.C. § 826.

---

[5]     AV2 also alleges that if Judge Cook did not directly order her to authorize the release of her records, trial counsel did.  (Compl. ¶ 87.)  Trial counsel, however, is not named as a defendant.  (*Id.* at 12.)  Even if he were, nothing indicates he gave such an order.

3

The Court lacks subject matter jurisdiction over Counts II and III because there has been no waiver of sovereign immunity with respect to those claims. *See Mitchell*, 463 U.S. at 212.

i

AV2 points to Uniform Code of Military Justice Article 6b as a sovereign immunity waiver, but that statute does not authorize her lawsuit in federal court.

Article 6b provides military-law offense victims a right to be "treated with fairness and with respect" for their dignity and privacy. 10 U.S.C. § 806b(a)(9). If a victim believes a court-martial ruling violates her rights under Military Rule of Evidence 513, she can petition the ACCA for a writ of mandamus requiring the military judge to comply with the rule. *Id.* at § 806b(e)(1). These ACCA decisions receive "priority" review in the CAAF. *Id.* at § 806b(3)(C). Article 6b, however, says nothing about suing in an Article III court. The federal government's consent to suit must be unequivocal, and here the statutory text contains no indication of a waiver. *Accord E.V.*, 906 F.3d at 1098.

AV2 argues the Court should apply the constitutional avoidance canon to allow for Article III review under Article 6b. She claims if federal court actions are not authorized, the statute would violate the Inferior Tribunals Clause because the CAAF would be supreme instead of inferior. (Brief in Opp. to Mot. to Dismiss 15–18.) But the Inferior Tribunals Clause has nothing to do with military courts. The clause, which empowers Congress to constitute tribunals "inferior to" the Supreme Court, "plainly relates to the 'inferior Courts'" referred to in Article III, Section 1—that is, federal

courts of appeal and district courts. *Glidden Co. v. Zdanok*, 370 U.S. 530, 543 (1962); U.S. Const. art. I, § 8, cl. 9. Congress created military courts pursuant to a different constitutional provision authorizing it to "make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cl. 14; *Weiss*, 510 U.S. at 166–67.

Even if the Inferior Tribunals Clause were used for that purpose, it would not mandate this Court's review of a court-martial's evidentiary rulings. The Constitution does not require the Supreme Court to review every decision from "inferior" Article III courts. *See* U.S. Const. art. III, § 2, cl. 2 (subjecting the Supreme Court's appellate jurisdiction to "Exceptions" provided by Congress).

In any event, AV2 would not be entitled to the relief Article 6b provides, mandamus, even if the Court were to interpret the statute as a federal-court sovereign immunity waiver.

District courts have original jurisdiction over actions "in the nature of mandamus" to compel a federal officer to perform a duty the plaintiff is owed. 28 U.S.C. § 1361. But mandamus is a "drastic" remedy available "only in extraordinary situations," and a party seeking it carries the burden to show her "right to issuance of the writ is clear and indisputable." *In re Citizens Bank, N.A.*, 15 F.4th 607, 616 (3d Cir. 2021) (internal quotation marks omitted); *Allied Chem. Corp v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384 (1953)). Also, the federal officer must owe the plaintiff a legal duty that is a "specific, plain ministerial act devoid of the exercise of judgment or discretion." *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972) (internal quotation marks omitted) (explaining

an act is ministerial only if "its performance is positively commanded and so plainly prescribed as to be free from doubt").

AV2 does not have a clear or indisputable right to mandamus. *See Allied Chemical*, 449 U.S. at 35. A claim that an evidentiary rule was interpreted or applied incorrectly is not extraordinary, but routine, and Judge Cook's decision was not ministerial, but involved significant discretion and judgment. *See Richardson*, 465 F.2d at 849; *Citizens Bank*, 15 F.4th at 616.

ii

AV2 argues sovereign immunity has been waived on several other grounds. First, she asserts the Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1361. (Compl. ¶¶ 16, 22.) Neither the general federal question nor the mandamus statute, however, waives sovereign immunity. *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996).

AV2 also contends the First Amendment right to petition government effects a sovereign immunity waiver here. *See* (Brief in Opp. to Mot. to Dismiss 7). There is, of course, no authority supporting that argument, and all AV2 relies on for such a patently incorrect proposition is a law review article. (Oral Arg. Tr. 59:19–25.)

Her reliance on the general presumption of judicial review for agency action is also misplaced. *See* (Brief in Opp. to Mot. to Dismiss 10–14). To the extent it applies, that presumption cannot override Article 6b's clear language, which the Court construes strictly. *See Lane*, 518 U.S. at 192.

16

Nor does the Administrative Procedure Act's sovereign immunity waiver apply to Counts II and III. Courts-martial are expressly excluded from the APA's definition of "agency" and, by extension, its waiver. *See* 5 U.S.C. §§ 701(b)(1)(F), 702.

Finally, *Marbury v. Madison*, 1 Cranch 137 (1803) doesn't help AV2 either. Although she claims that case requires judicial review here, this Court's ruling that sovereign immunity has not been waived for her military-rule claims is not in tension with *Marbury*'s foundational principles. *See* (Oral Arg. Tr. 65:21–23).

4

While Counts II and III are barred by sovereign immunity, AV2's remaining claims, Counts I and V-VIII, are not. As explained in Part III, however, these claims cannot go forward because the Court lacks subject matter and equitable jurisdiction to review them.

Count I contends Smart and McDonough violated the Privacy Act when Smart released AV2's claim records, but agencies, not their individual officers, are proper defendants for Privacy Act claims. *Morris v. United States Probation Servs.*, 723 F. Supp. 2d 225, 227–28 (D.D.C. 2010). Accordingly, AV2's Privacy Act claim suffers from a major pleading defect. In any event, she explained at oral argument that she seeks relief against an agency, though she couldn't specify which one. *See* (Oral Arg. Tr. 28:9–30:5 (mentioning the Departments of Defense and Veterans Affairs and asserting the "unitary government" has AV2's records)).

For a sovereign immunity waiver, AV2 relies on the Privacy Act's catchall remedy provision, which authorizes suits in federal district court against agencies that fail to comply with specified Privacy Act provisions in a way that has an "adverse effect"

on the plaintiff.  5 U.S.C. § 552a(g)(1)(D).  Monetary relief—in particular, actual damages, costs and attorneys' fees—is obtainable through such an action, but AV2 seeks solely injunctive relief.  § 552a(g)(4); *Sussman v. United States Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) (citing *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988)).

Equitable relief in cases implicating the Privacy Act's catchall provision, however, is available because the Administrative Procedure Act waives sovereign immunity for suits requesting injunctive relief against federal agencies.  *See Doe v. Chao*, 540 U.S. 614, 619 n.1 (2004).  Specifically, an action that seeks "relief other than money damages" and states a claim that an agency "acted or failed to act in an official capacity or under color of legal authority" will not be "dismissed nor relief therein be denied on the ground that it is against the United States."  5 U.S.C. § 702.  This "broad" sovereign immunity waiver applies whether the suit is brought under the APA or—as with AV2's Privacy Act claim—not.  *Gentile v. SEC*, 974 F.3d 311, 316 (3d Cir. 2020); *Chamber of Com. of United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

AV2's other claims, Counts V–VIII, allege constitutional violations of the Fourth and Fifth Amendments against Judge Cook, Austin, the ACCA and the CAAF.  (Compl. ¶¶ 104–125.)  Like Count I, these claims are not barred by sovereign immunity because they implicate a sovereign immunity exception for alleged unconstitutional conduct.  *See Dugan*, 372 U.S. at 621–22; *Larson*, 337 U.S. at 690–91, 701–02.

## C

In addition to sovereign immunity barring Counts II and III against Judge Cook, judicial immunity also precludes AV2's claims against him.  (Compl. ¶¶ 86–110.)  A

18

judge, including a military judge, in his judicial capacity has "absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006); *see Gill v. United States*, 415 F. Supp. 3d 127, 136–37 (D.D.C. 2019) (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).  He can be liable "only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).  Judicial immunity bars injunctive relief.  *See Martinez v. United States*, 838 F. App'x 662, 664 (3d Cir. 2020) (per curiam); *Stevens v. Osuna*, 877 F.3d 1293, 1308 (11th Cir. 2017).

Judge Cook is absolutely immune from AV2's claims against him because those claims pertain solely to actions taken in his judicial capacity.  *See Azubuko*, 443 F.3d at 303.

## III

Defendants argue that if the Court concludes it has subject matter jurisdiction, it should abstain from intervening in Murray's court-martial under *Schlesinger v. Councilman*, 420 U.S. 738 (1975).  (Mot. to Dismiss 19–20.)  AV2 counters that abstention is inappropriate given she is a civilian witness and has exhausted her remedies in the military courts.  (Brief in Opp. to Mot. to Dismiss 18–19.)

## A

Congress has not given Article III courts subject matter jurisdiction "directly to review court-martial determinations." *Councilman*, 420 U.S. at 746.  As a "general rule," a court-martial's acts, "within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise." *Id.* (quoting *Smith v. Whitney*, 116 U.S. 167, 177 (1886)).  There is no exception for a "pre-judgment direct attack" on a court-martial decision that goes "beyond recognized

grounds" for collaterally attacking a judgment. *See id.* at 746–49, 749 n.19, 752–53 (explaining those grounds are the absence of jurisdiction or "some other equally fundamental defect" and "mere[]" error" is insufficient).

Even if a federal court has subject matter jurisdiction, it normally lacks "equitable jurisdiction" to intervene, "by injunction or otherwise," in ongoing court-martial proceedings. *Id.* at 740, 754, 758. *Councilman* abstention is improper, however, when there are "extraordinary circumstances." *See In re Al-Nashiri*, 835 F.3d 110, 128–30 (D.C. Cir. 2016). None are present here.

B

The Court cannot intervene in Murray's court-martial proceedings because, under *Councilman*, it lacks subject matter jurisdiction and, even if it didn't, it would lack equitable jurisdiction.[6]

*Councilman* addressed the "appropriateness of any federal court intervention in ongoing military proceedings." *Bowman v. Wilson*, 672 F.2d 1145, 1157 (3d Cir. 1982). The case involved an Army captain on active duty charged with selling, transferring and possessing marijuana in violation of the Uniform Code of Military Justice. *Councilman*, 420 U.S. at 741. He sued to enjoin the impending court-martial proceeding against him for lack of "jurisdiction." *Id.* at 741–42. The district court agreed, and the court of appeals affirmed. *Id.* at 742.

The Supreme Court reversed, holding the district court lacked "equitable jurisdiction" to grant injunctive relief because Councilman showed no harm besides

---

[6]     Two of AV2's Fifth Amendment claims request injunctive relief against the ACCA and the CAAF, rather than in Murray's impending court-martial. (Compl. ¶¶ 111–25.) Those claims, however, ultimately seek the same relief as her other claims, namely preventing the release of her claim records. *See* (*id.* at 19).

that incidental to his case's resolution in the military courts. *See id.* at 758. The same result is warranted in this case even though AV2, unlike Councilman, is a civilian, non-party witness—though one who was allegedly sexual assaulted while serving in the Army by the master sergeant facing an impending court-martial trial.

To start, Congress has not authorized the Court to review a military judge's evidentiary rulings. *See id.* at 746; *cf.* 28 U.S.C. § 1259 (listing CAAF decisions the Supreme Court can review by writ of certiorari). Moreover, AV2 is not seeking relief on a recognized ground for collateral attack. *See Councilman*, 420 U.S. at 749, 749 n.19. Rather, she wants the Court to insert itself into the military court system because she thinks Judge Cook, the ACCA and the CAAF got an evidentiary question wrong. *See* (Brief in Opp. to Mot. to Dismiss 6 (AV2 is requesting that the Court "revise and correct" Judge Cook's orders)). Consequently, the general rule prohibiting Article III review of court-martial determinations applies. *See Smith*, 116 U.S. at 177.

Even if the Court had subject matter jurisdiction to intervene, it would lack equitable jurisdiction to do so. While a few of the considerations underlying *Councilman* abstention are less persuasive in this context, most are equally applicable. For example, the *Councilman* Court pointed to "comity," the "necessity of respect for coordinate judicial systems," and that the "military court system generally is adequate to and responsibly will perform its assigned task." 420 U.S. at 756, 758. Another rationale, judicial economy, is especially compelling here, where AV2 would ultimately seek five layers of appellate review for an evidentiary issue: the ACCA and CAAF, this Court, the Third Circuit and Supreme Court. *See Hennis v. Hemlick*, 666 F.3d 270, 271 (4th Cir. 2012); (Oral Arg. Tr. 62:4–23).

Nothing about this case justifies deviating from the "general equitable balance" against court-martial intervention or presents extraordinary circumstances. *Councilman*, 420 U.S. at 740; *Al-Nashiri*, 835 F.3d at 128–30.  Dissatisfaction with an evidentiary ruling epitomizes ordinary.

Judge Cook, with the approval of AV2's SVC, crafted a procedure to address the confidential communications in her claim for VA disability benefits.  (May 27, 2021 Cook Order 4).  After thoroughly considering her patient-psychotherapist privilege argument, Judge Cook issued a ruling she disagreed with.  (June 28, 2021 Cook Order.) He then stayed the release of AV2's records while she sought extraordinary relief in the ACCA and the CAAF, both of which agreed with Judge Cook.  (ACCA Order; Nov. 8 2021 CAAF Order; Dec. 9, 2021 CAAF Order.)  Just before the parties were to finally receive her records, she received another stay from this Court.  (ECF 8.)  It will not now intervene to do something it cannot and create a successive appellate track in the Article III courts.[7]  *See also E.V. v. Robinson*, 200 F. Supp. 3d 108, 114 (D.D.C. 2016) (suggesting *Councilman* abstention may be appropriate).

An appropriate Order follows.

---

[7]  *Center for Constitutional Rights v. Lind*, 954 F. Supp. 2d 389 (D. Md. 2013), cited by AV2, is inapt.  That case involved journalists, media enterprises and advocacy organizations who sought intervention to access records in widely followed court-martial proceedings against an Army intelligence analyst who leaked classified documents.  *Id.* at 391–92.  In concluding *Councilman* abstention was inappropriate, the district court emphasized the entities seeking equitable relief were attempting to vindicate their First Amendment right of access.  *Id.* at 398–99 (explaining their lawsuit implicated "fundamental constitutional values of openness of court proceedings").  By contrast, AV2 asks that the Court intervene in Murray's court-martial based on an evidentiary ruling she thinks is incorrect.

BY THE COURT:


***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.